SHI QING LIN, Petitioner

v.

ATTORNEY GENERAL OF
the UNITED STATES.

No. 08–3046.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) Dec. 2, 2009.

Filed: Dec. 21, 2009.

Henry Zhang, Esq., Zhang & Associates, New York, NY, for Petitioner.

Kristina R. Sracic, Esq., Paul F. Stone, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Attorney General of the United States.

Before: RENDELL, FISHER and GARTH, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

Shi Qing Lin has filed a petition for review of the final order by the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ's") denial of Lin's requests for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

The parties are familiar with the background of this case, and so we provide only a summary of the proceedings. Lin is a native and citizen of the People's Republic of China who arrived in the United States in April 2005. He was placed in removal proceedings for being an alien present in the United States without being admitted or paroled after inspection by an immigration officer (8 U.S.C. § 1182(a)(6)(A)(i)). He conceded removability. In November 2005, he applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") as a Falun Gong practitioner. The IJ held an evidentiary hearing on Lin's claims on May 18, 2007.

Lin testified about his involvement with Falun Gong. He stated that he had mild arthritis during childhood, and the condition persisted despite visits to about twelve doctors of Chinese and Western medicine. His maternal uncle introduced him to the practice of Falun Gong, and after study and practice, his arthritic condition substantially improved. In July 1999, his uncle warned him that the Chinese government had banned the practice of Falun Gong. In August 1999, Lin was arrested at home and was taken into detention for a month. During his detention, he was interrogated and beaten, receiving superficial injuries for which he did not seek medical treatment. He was detained with several other Falun Gong practitioners, and he was released only after he signed a document renouncing Falun Gong and promising that he would no longer practice Falun Gong. Lin secretly continued his Falun Gong practice at home, and he stated that village cadres made periodic home checks through 2003. He continued to practice Falun Gong less often, once every two weeks, because he needed to allot more time for his family, and his arthritis was basically cured at that time. He did not leave China until April 2005, waiting until then because he had to care for his mother, who had a stomach illness, and his younger sister was unable to assume caregiving duties until her school graduation.

On cross-examination, when asked for documentation regarding his consultation with twelve doctors in China for his arthritis, Lin stated that his mother attempted to find the doctors, but they all had relocated, died, or changed professions since the time of treatment. Also, Lin indicated that he did not know any of his fellow detainees very well. When confronted with a supporting letter by his uncle stating that he, too, was detained and saw Lin at the police station, Lin stated that his uncle was in another room and that he did not know of his uncle's presence until later. When asked why he made no mention in his asylum application that his uncle was similarly detained, interrogated, and beaten, Lin stated that his application was his own personal matter. When pressed for an explanation, Lin explained that he did not mention his uncle's detention in his application out of fear of getting his uncle into trouble. When reminded that he already had mentioned his uncle in his asylum application when describing how he was first introduced to Falun Gong, Lin simply affirmed that he had done so, but he stated that he did not understand why he should have mentioned his uncle's detention.

In addition to his testimony, Lin submitted supporting documentation, including articles concerning country conditions in

China with respect to Falun Gong, the 2006 State Department County Report for China, a recent X-ray and report concerning Lin's right knee, articles concerning Falun Gong's benefits for arthritic conditions, photographs of Lin at a Falun Gong rally in July 2006 in Washington, D.C., and letters from his mother and his uncle. On June 5, 2007, the IJ found that Lin lacked credibility, denied all forms of relief, and ordered Lin removed to China. On June 19, 2008, the BIA dismissed the appeal, adopting and affirming the portion of the IJ's decision denying relief and supplementing the decision with respect to the adverse credibility determination. This petition for review followed.

■ We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a). Here, the BIA appears to have deferred to the IJ's credibility determination in some respects, while also remarking that Lin's explanations for certain credibility issues "may have some merit." (BIA Jun. 19, 2008 Decision, A.R. 2.) Thus, we will review the IJ's decision as supplemented by the BIA. *See Xie v. Ashcroft,* 359 F.3d 239, 242 (3d Cir.2004). Credibility determinations are reviewed under the substantial evidence standard. *See id.* at 243. Adverse credibility determinations based on speculation or conjecture, rather than on record evidence, are reversible. *Gao v. Ashcroft,* 299 F.3d 266, 272 (3d Cir.2002). Lin's asylum application was filed after May 11, 2005, and thus the provisions of the REAL ID Act governing credibility determinations in asylum applications apply. *See Chukwu v. Att'y Gen.,* 484 F.3d 185, 189 (3d Cir.2007).

Under the REAL ID Act, an adverse credibility determination can be based on inconsistencies, inherent implausibilities, inaccuracies, and other factors, without regard to whether they go to the heart of an applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii). The Court must uphold the credibility determination of the BIA unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

■ Lin tacitly challenges the applicability of the REAL ID Act provision regarding credibility determinations, contending that the agency's adverse credibility determination rests upon minor and immaterial discrepancies. We need not consider the effects of the new provisions, however, because we conclude that substantial evidence supports the adverse credibility determination on matters that concern the heart of Lin's claim. For example, Lin argues that the IJ relied on inconsistencies between Lin's asylum application and his testimony regarding his education, and between his airport interview by immigration agents and his testimony regarding his delayed departure from China. We note that the BIA appears not to have emphasized these aspects of the IJ's decision and instead affirmed the adverse credibility finding on other grounds. Specifically, the BIA discussed the discrepancy between Lin's testimony that he was not very familiar with anyone who was detained with him during his 1999 arrest and Lin's uncle's letter indicating that he and Lin had been detained at the same location and time.[1]

---

1. The BIA remarked on Lin's lack of credibility regarding his testimony that he did not see his uncle at the police station, noting that "the excuse that the uncle was in a different room and [Lin] did not see him is belied by the uncle's statement that he saw [Lin]." (BIA Jun. 19, 2008 Decision, A.R. 2.) We note that it is not impossible that Lin's uncle could

have seen Lin from a different room without also being seen by Lin; Lin could have had his head turned away from his uncle at the time. Yet this comment by the BIA is inconsequential to its point that Lin knew of his uncle's detention but omitted that detail from both his application for relief and his testimo-

Moreover, the BIA rejected Lin's subsequent explanation that he did not want to risk revealing his uncle's Falun Gong activities in his written asylum affidavit, pointing out that Lin already had implicated his uncle's Falun Gong practice in the affidavit. We conclude that the record contains substantial evidence to support the adverse credibility finding and does not compel a contrary finding.[2]

In sum, we discern no reason to disturb the agency's denial of asylum and withholding of removal. Lin presents no argument regarding his claim for protection under the CAT. We deem any challenge to the denial of CAT relief to be waived.

We will deny the petition for review.

**Maritza RAMOS DE HERRERA,**
**Petitioner**

**v.**

**ATTORNEY GENERAL OF**
**the UNITED STATES.**

No. 08–3683.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) Dec. 16, 2009.

Filed: Dec. 21, 2009.

ny, and his inadequate explanation for the omission reflects negatively on his credibility.

**2.** Because substantial evidence supports the adverse credibility finding, we need not reach Lin's argument that the IJ made unreasonable demands for corroborating evidence in support of his claims.

Francis X. Geier, Esq., Anayancy R. Housman, Esq., Law Office of Anayancy R. Housman, Elizabeth, NJ, for Petitioner.

Aliza B. Alyeshmerni, Esq., Richard M. Evans, Esq., Joan E. Smiley, Esq., United States Department of Justice Office of Immigration Litigation, Washington, DC, for Attorney General of The United States.

Before: RENDELL, FISHER and GARTH, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

Maritza Ramos De Herrera ("Ramos"), a thirty-four-year-old native and citizen of Guatemala, seeks review of a final order of removal entered by the Board of Immigration Appeals ("BIA"). We will deny the petition for review.

### I.

Ramos entered the United States in 1994 without inspection, and filed an application for asylum at that time. In 2006, the government served a Notice to Appear, and Ramos filed an updated asylum application. At a hearing before an Immigration Judge ("IJ"), Ramos conceded removability as an alien present without being admitted or paroled, and she pursued applications for asylum, withholding of removal, relief under the Convention Against Torture ("CAT"), and cancellation of removal under 8 U.S.C. § 1229b(b)(1). The IJ denied relief, finding that Ramos failed to meet her burden of proof, but granted voluntary departure.

The BIA affirmed, issuing its own decision. The BIA explained that Ramos sought asylum based on a claim that she suffered past persecution on account of her membership in a particular social group, which she defined as "young Guatemalan females targeted for recruitment by the guerillas and who suffered persecution of a sexual nature if they refused to assist the guerillas." While the evidence showed that Ramos was harassed and threatened by guerillas in Guatemala, she was never harmed physically or sexually, and thus the BIA concluded that Ramos is not a member of the group she is attempting to define, and that, furthermore, the alleged group lacks social visibility. The BIA held that Ramos failed to provide sufficient evidence that the threats she received rose to the level of persecution. The BIA also found insufficient evidence of a well-founded fear of future persecution. Even assuming that Ramos could establish the existence of her particular social group, the BIA held that Ramos is not currently a member of that group because she has matured in age since 1994, was never harmed by the guerrillas, and has not es-

tablished that females of her age face the same threats as females of grade school age. The BIA also held that Ramos failed to meet the more stringent burden of proof for withholding of removal, and did not establish under the CAT that she more likely than not faces torture in Guatemala.

Finally, the BIA held that Ramos did not meet her burden of proof for cancellation of removal, which she sought based on a claim that her six-year-old United States citizen son would suffer "exceptional and extremely unusual hardship" if removed. The BIA noted the record evidence of diminished educational opportunities, poor health care, a lower living standard, and crime in Guatemala, and also considered the child's relative youth, ability to speak Spanish, good health, and family support in Guatemala. Based on this evidence, the BIA held that Ramos did not show an exceptional and extremely unusual hardship. Ramos timely filed a petition for review in this Court.

## II.

We first consider our jurisdiction. We have jurisdiction to review the BIA's final order of removal, including the denials of asylum, withholding of removal, and CAT relief. See 8 U.S.C. § 1252(a)(1). However, despite Ramos's argument to the contrary, we lack jurisdiction to review the denial of cancellation of removal under § 1229b(b)(1). "This Court generally lacks jurisdiction to review discretionary decisions made under § 1229b regarding

cancellation of removal." *Mendez–Reyes v. Att'y Gen.*, 428 F.3d 187, 189 (3d Cir. 2005) (citing 8 U.S.C. § 1252(a)(2)(B)(i)). We have held that a determination regarding the "exceptional and extremely unusual hardship" requirement is a "quintessential discretionary judgment." *Mendez–Moranchel v. Ashcroft*, 338 F.3d 176, 179 (3d Cir.2003). Jurisdiction is retained in such cases only to consider "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D).

Ramos contends that she raises a "question of law" because the BIA held her claim to a "heightened legal standard" by "ignor[ing] the cumulative effect" of the hardships that her son would face. A review of Ramos's briefing, however, reveals that her argument amounts to no more than an attempt to reargue the persuasiveness of the hardship evidence. Such an argument is not exempt from the jurisdictional bar. See *Mendez–Moranchel*, 338 F.3d at 179 ("[W]e lack jurisdiction to review the issue Mendez presents on appeal—whether the [BIA] and [IJ] were correct in determining that he does not meet the hardship requirements for cancellation of deportation."). We see no indication that the BIA applied an incorrect legal standard here, and the BIA cannot be said to have applied an impermissibly "heightened" standard merely because it chose to deny relief after considering the record evidence before it.[1] Thus, we lack jurisdiction to review the denial of cancellation of removal.

---

1. The BIA cited and relied upon the standards set forth in *In re: Gonzalez Recinas*, 23 I. & N. Dec. 467 (BIA 2002) (en banc), *In re: Andazola–Rivas*, 23 I. & N. Dec. 319 (BIA 2002) (en banc), and *In re: Monreal–Aguinaga*, 23 I. & N. Dec. 56 (BIA 2001). After considering the relevant factors identified in these cases, the BIA concluded: "While adjusting to life in Guatemala may be difficult for [Ramos]'s son, his youth, health, ability to communicate in Spanish, and access to family

should help him through his adjustment period." Ramos contends that the BIA in effect required her to show that removal would work an "unconscionable" hardship on her son. However, nothing in the BIA's decision indicates that it deviated from its established standards or required a showing from Ramos beyond that normally required to establish an "exceptional and extremely unusual hardship." Indeed, the BIA's decision is consistent with *In re: Monreal–Aguinaga*, which

## III.

holds that, to establish "exceptional and extremely unusual hardship," an alien must show that the qualifying relative would suffer hardship "substantially beyond" that which would be expected to result from removal. 23 I. & N. Dec. at 60.